The question arising from this record is, for what was the additional one per cent reserved? Was it for forbearance, or giving day of payment? Or did it grow out of an original contract? If for the first, it may be usury; if on the second, it cannot be. I shall not trouble myself to prove that a debt contracted in New York, and without reference to the laws of any other government, is governed in its exposition by the laws of New York. The original debt, then, being contracted in New York, without reference to the laws of any other government, is governed by the laws of that government, and the rate of interest which the debtor shall pay is part of the contract, which seems to be admitted in the present case to be seven per cent. The debtor in this State executes a note, payable in four months, for the balance of the debt, in which is included the interest, at seven per cent, up to the time the note became payable. The sum secured to be paid by the note is precisely the sum which the defendant would have been bound to pay if no note had been given. It became due out of no new contract; it arose solely from the operation of the original debt, and was, in *Page 264 
fact, nothing more than giving a new evidence of that debt; and if, on the day it fell due, it was lawful for the plaintiff to have received that sum, it certainly could not be usurious to hold or have taken a note evidencing that obligation. The additional one per cent was therefore not taken for forbearance or giving day of payment, but arose entirely from the original contract, which very clearly was a legal one. What rate of interest the note shall bear after it falls due, the parties have not (481) pretended to say; it is therefore left to the law, and is not now a subject of consideration. The defendant's counsel has offered a very ingenious argument, but I think it entirely unsound. I believe it is substantially noticed in the foregoing opinion. But, I think, in his argument, the opinion of Lord Kenyon in Dewar v. Span is not understood correctly. I think that his Lordship means that neither the original bond or the new bond was within the protection of the statute 14 Geo. III., under which act the contract was attempted to be legalized. That act declares that all mortgages and securities executed in England, of or concerning lands being in Ireland or the colonies, shall have Irish or colonial interest, as the case may be. The bond was given for part of the purchase money of lands lying in the West Indies; it bore on its face West India interest; that bond was afterwards surrendered up, and a new bond taken, bearing also on its face West India interest. Lord Kenyon says that the act relied on (to-wit, 14 Geo. III.) to support this case does not extend to it. He then repeats a part of the act, to-wit,mortgages and other securities, concerning lands in Ireland and the West Indies, reserving the interest allowed in those countries, shall be good. Now, this, says he, is a mere personal contract, and is not within the act; evidently meaning, I think, the old as well as the new bond. He speaks of the contract as a mere personal one, not one within the act, to-wit, a mortgage orother securities concerning land; for it would be strange that a new bond, given upon the surrender of an old bond between the same parties, in the same country, governed by the same laws and imposing the same obligations, and no other, with the old, should be void and the old bond legal. They both must stand, I think, or fall together. But should Lord Kenyon be mistaken as to the operation of the statute of George, it does not (482) affect this case. I think the judge erred in informing the jury that the bond was usurious, and that a new trial should be granted.